The MOJONNIER DAWSON COMPANY, a corporation, Plaintiff,

v.

EBY'S GUERNSEY DAIRY, Inc., a corporation, Ward C. Cramer Associates, Inc., a corporation; and Harvey B. Fink and Ward C. Cramer, Defendants.

Civ. A. No. 2372.

United States District Court
N. D. Indiana,
South Bend Division.

Dec. 1, 1958.

Eugene Knoblock, South Bend, Ind., John F. McCanna, Oak Park, Ill., for plaintiff.

Bontrager & Spahn, Elkhart, Ind., for defendants.

GRANT, District Judge.

### Findings of Fact

1. Plaintiff, The Mojonnier Dawson Company, is an Illinois corporation, with its principal office and place of business at 9151 Fullerton Avenue, Franklin Park, Illinois.

2. Defendant, Eby's Guernsey Dairy, Inc., is an Indiana corporation, doing

business at 1425 West Lusher Avenue, Elkhart, Indiana.

3. Defendant, Harvey B. Fink, is a resident of Elkhart, Indiana, residing at R.R. 4, Elkhart, Indiana, and is the principal of said Eby's Guernsey Dairy, Inc.

4. The complaint names as additional defendants, Ward C. Cramer Associates, Inc., a corporation of the Commonwealth of Massachusetts, doing business at 551 Boylston Street, Boston, Massachusetts, and Ward C. Cramer, a resident of Boston, Massachusetts, and the principal and alter ego of said Ward C. Cramer Associates, Inc. These defendants were not served with the complaint because they are outside the jurisdiction of this Court. However, these defendants have had notice of this suit and have refused to defend the first named defendants as shown by findings below.

5. This is an action arising under the patent laws of the United States and jurisdiction of this Court is based on Title 28, Section 1338 of the United States Code.

6. On February 2, 1954, United States Letters Patent No. 2,667,990 were duly and legally issued to plaintiff for an invention of Albert B. Mojonnier, entitled "Dispensing Mechanism With Time Controlled Flow", and on May 18, 1954, said Letters Patent No. 2,667,990 were duly and legally reissued to plaintiff as Reissue Patent No. 23,830, and said Letters Patent No. 2,667,990 were surrendered, and plaintiff ever since has been and now is the sole owner and holder of said Reissue Letters Patent and of all rights of recovery thereunder.

7. Plaintiff has for many years last past manufactured and sold filling apparatus embodying the inventions of said Letters Patent, sold under its trademark "Electromatic".

8. Claims 1, 6 and 7 of said Reissue Letters Patent No. 23,830, were held valid as a matter of law by the United States Court of Appeals, Seventh Circuit, in a decision dated January 15, 1958, in Appeal No. 11784 from Civil Action 54–C–277 in the Northern District of Illinois, Eastern Division, 142 F.Supp. 385, entitled The Mojonnier Dawson Company v. U. S. Dairies Sales Corporation, 251 F.2d 345.

9. On February 24, 1958, said United States Court of Appeals, Seventh Circuit, issued its mandate holding said Reissue Letters Patent No. 23,830 valid.

10. On April 29, 1958, said defendants U. S. Dairies Sales Corp., et al., filed in the Supreme Court of the United States a petition for a writ of certiorari to review the judgment of the United States Court of Appeals, Seventh Circuit, entered January 15, 1958, in said Appeal No. 11784; and on June 2, 1958, the Supreme Court of the United States denied said petition for a writ of certiorari, reported 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148. There was no request for rehearing.

11. On or about February 10, 1958, defendants purchased from Ward C. Cramer Associates and/or Ward C. Cramer Associates, Inc., a filling apparatus bearing a nameplate having inscribed thereon "manufactured by ward c. cramer associates 551 boylston st. boston, mass. Model PPCH 2T Serial 1130". Said purchase is evidenced by an invoice dated February 11, 1958, showing the purchase price to be $2,401. Said filling apparatus (referred to hereinafter as the "accused Cramer filling machine") was received by defendants some time in February, 1958 at their place of business at 1425 West Lusher Avenue, Elkhart, Indiana. Defendants paid to said Ward C. Cramer Associates and/or Ward C. Cramer Associates, Inc., the purchase price shown on said invoice. Defendants now have possession of said accused Cramer filling machine at their said place of business.

12. Promptly after receipt of said accused Cramer filling machine at defendants' said place of business, defendants put said machine into operation in the regular course of their business, filling milk into paper cartons for the purpose of sale thereof to the public in and around Elkhart, Indiana, each carton be-

ing identified by printing thereon defendants' name "Eby's Dairy".

13. On or about March 24, 1958, defendants were notified by registered letter mail of plaintiff's claim of infringement of its Reissue Patent 23,830 by reason of defendants' use of said accused Cramer filling machine. Said letter requested defendants to make satisfactory settlement to the plaintiff because of the alleged infringement. No settlement has been made.

14. Subsequent to said letter notice March 24, 1958, defendants repeatedly contacted the named defendants Ward C. Cramer and/or Ward C. Cramer Associates, Inc. and requested them to defend this action because of the fact that said accused Cramer filling machine was manufactured by said Ward C. Cramer and/or Ward C. Cramer Associates, Inc. and was sold by them to defendants Eby's Guernsey Dairy, Inc. and its principal, Harvey B. Fink. Defendants' said request was unequivocally refused by said Ward C. Cramer and/or Ward C. Cramer Associates, Inc.

15. Also subsequent to plaintiff's said charge of infringement by letter March 24, 1958, these defendants repeatedly made request to said Ward C. Cramer and/or Ward C. Cramer Associates, Inc., that they hold harmless from said alleged infringement these defendants Eby's Guernsey Dairy, Inc. and Harvey B. Fink; and all such requests have been unequivocally refused.

16. With the consent of these defendants, on June 17, 1958, plaintiff took photographs of said accused Cramer filling machine bearing serial No. 1130 at defendants' dairy. These photographs were taken by Albert B. Mojonnier during the afternoon while said Cramer machine was disassembled for routine cleaning following its regular use earlier that day in filling milk into paper cartons. These photographs are identified as Exhibits A, B, C, D, E and F.

17. Exhibit A shows the accused Cramer filling machine serial No. 1130 as it stands for operation at defendants' plant. This is a dispensing mechanism for the repetitive filling of milk into paper cartons known as "Pure Pak" cartons and also for cartons known as "Canco" cartons. In Exhibit E is shown a "Pure Pak" carton in position for filling. This is a ½ gallon carton especially printed for defendants' use and bearing defendants' name "Eby's Dairy". This Cramer machine has a milk container 1 to which milk is supplied through a pipe-line 2 from a large tank not shown in the photographs. The pipe-line 2 connects to the top of the container 1 through a coupling 3. Mounted upon or in association with this container 1 are two identical but independently operable dispensing mechanisms designated generally by A and B. Each such mechanism, including its operating parts, performs identically the same function of dispensing milk from the container 1 into a paper carton. In view of the identity in construction and operation of these two dispensing mechanisms, only one will be described; however, each such mechanism is supplied with milk from a common supply within the container 1, namely: from a preselected head of milk within said container. A float valve means, described more particularly hereafter, within the container 1 serves to maintain a substantially constant hydrostatic head of milk in the container 1. There is a fixed orifice outlet in the bottom of the container having an on-off valve, with an adjustable electronic timer for controlling the length of time the valve is open. The person who is operating the machine places an Eby's ½ gallon carton in the position shown in Exhibit E with the open top end of the carton in position to receive milk from the dispensing nozzle at the bottom of the container and with the lower end of the carton in position to contact a starting switch by forward pressure of the carton against the switch. This starts the electronic timer and also energizes a solenoid which opens the valve in the bottom of the container 1 and allows milk to flow by gravity into the carton. The electronic timer is set to

operate for a predetermined length of time and when this time interval is reached the electronic timer causes the solenoid to be deenergized, thus allowing the valve to close and thereby stop the flow of milk into the carton. The parts are constructed so that the flow of milk through the dispensing nozzle will be at a constant rate throughout the time interval in which the valve is held open. By reason of the constant preselected hydrostatic head of the milk in container 1 and the predetermined value of this head with relation to the orifice factor and area of orifice of the dispensing nozzle the flow of milk through the nozzle will be at a constant rate. The conjoint action of these parts produces a controlled flow of the milk to provide for relatively rapid filling of the carton and control of splash effect of the milk in its discharge into the carton. The volume of milk dispensed at each repetitive operation is controlled by the length of time the valve is open, together with the constant low hydrostatic head of the milk in the container and the fixed orifice factor of the dispensing outlet nozzle. As a result of this combination of elements, a substantially constant volume of milk is dispensed each time the solenoid is energized.

More particularly, the supply of milk from the large source through the pipeline 2 to the container 1 is controlled by a float valve 4 shown in Exhibit B. This float valve 4 is carried on a tube 5, which in turn is carried by a cover 6 which is removably attached to the top of the container 1. Milk from the supply pipe-line 2 is delivered through coupling 3 to the tube 5 and its passage into the container 1 at the lower end of said tube is controlled by the up-and-down movement of the float 4 on tube 5. This float is constructed to maintain the milk in the container at a preselected level. This provides a preselected hydrostatic head of milk which has a predetermined value with relation to the orifice factor and area of orifice in the bottom delivery outlet through the nozzle 7 at the bottom of the container. A ball valve

8 opens and closes said delivery outlet in the nozzle. This ball valve is fixed to the lower end of a rod 9, which in turn is fixed at its upper end to the armature of the solenoid 10. This solenoid is detachably mounted on the cover 6 of the container. The solenoid 10, together with the rod 9 and its ball valve 8, may be removed as a unit for cleaning and servicing, as shown in Exhibit C. Exhibit D shows the nozzle 7 removed from the lower end of the container and also shows the ball valve 8 just above the nozzle. When the nozzle is fastened to the lower end of the container in operating position, as shown in Exhibits A and E, the ball valve 8 is normally seated by gravity in the orifice opening in the nozzle. This is the closed position of the valve to stop the flow of milk through the nozzle. When the ball valve 8 is lifted to an open position by energization of the solenoid, the milk flows by gravity through the open delivery outlet of the nozzle at the constant flow rate above mentioned. This flow continues for a predetermined time interval as controlled by the electronic timer 12 which is shown in Exhibit F. There are two electronic timer units, one designated $A^1$ for the dispensing mechanism A, and another designated $B^1$ for the dispensing mechanism B. Both of these are mounted within the casing 13 shown in Exhibit A.

In operation, the attendant places the carton in the position shown in Exhibit E so that the dispensing nozzle 7 will discharge into the open top of the carton. The attendant then presses forwardly against the lower end of the carton to move it into contact with a starting switch 14, thereby starting the electronic timer into operation and energizing the solenoid 10 which moves the ball valve 8 to the open position. The electronic timer operates to energize the solenoid and hold the ball valve open for a predetermined interval of time, at the termination of which the electronic timer deenergizes the solenoid and the ball valve quickly falls to the closed position, thereby stopping the flow of milk through

the delivery outlet. By adjusting the knob 15 on the electronic timer, the interval of time may be changed to accurately deliver any given quantity of milk from ½ pint up to ½ gallon of milk, or any intermediate quantity. This time adjustment is very accurate and in setting up the machine for any particular quantity such as, for example, a ½ pint carton or a 1 quart carton or a ½ gallon carton, the quantity may be determined to a high degree of accuracy merely by adjustment of this control knob 15.

The Cramer machine includes a hand-operated capper 16 for Canco cartons, a power-operated stapler 17 for Pure Pak cartons, and a power-operated mechanism 18 for the stapler, all as shown in Exhibit A.

18. On June 17, 1958, in the afternoon, at a meeting between the parties to this suit at the office of defendant Eby's Guernsey Dairy, Inc., 1425 West Lusher Avenue, Elkhart, Indiana, there was present: Albert B. Mojonnier, president of plaintiff corporation, John F. McCanna, plaintiff's attorney, defendant Harvey B. Fink, and Alphonse J. Spahn, defendants' attorney. At this meeting the subject matter of the complaint herein was discussed between those present. At this meeting Albert B. Mojonnier said that the selling price of plaintiff's Model D P "Electromatic" filling machine, which is equivalent in construction and operation to the accused Cramer filling machine serial No. 1130, is $4,475 as compared with $2,401 which defendants paid for this Cramer machine serial No. 1130. Harvey B. Fink questioned plaintiff's selling price of plaintiff's Model D P filling machine of this equivalent construction and then went into his inner office and brought out one of plaintiff's general catalogs including a price sheet. Albert B. Mojonnier pointed out from this catalog and price sheet the price $2,270 for the Mojonnier "Electromatic" model D A, plus the price $1,180 for the conversion unit B to add stapler for "Pure Pak" cartons, plus the $1,025 for the power unit for operating the stapler, the total being $4,475. At this time Albert B. Mojonnier pointed out that defendants purchased said Cramer machine serial No. 1130 for $2,401, as compared with plaintiff's selling price of $4,475 for plaintiff's Model D P "Electromatic" filling machine made under the Mojonnier Reissue Patent 23,830 here in suit and constructed to perform the functions equivalent to said Cramer machine, and that such purchase by the defendants was $2,074 below plaintiff's selling price. At this time Albert B. Mojonnier stated that said Cramer machine embodies the invention here in suit and was manufactured without authority of plaintiff and sold to defendants without authority of plaintiff and in violation of plaintiff's Reissue Patent 23,830.

19. Prior to defendants' purchase of said Cramer machine, defendants acquired ownership of a Model C A "Electromatic" filling machine manufactured by plaintiff. Defendants used this filling machine in its plant at 1425 West Lusher Avenue, Elkhart, Indiana, over a considerable period of time filling milk into "Canco" paper cartons made by American Can Company.

20. The accused Cramer machine has been in use by defendants at its dairy plant in the regular operation of defendants' business continuously since said Cramer machine was installed in defendants' dairy and is now in every day use according to defendants' needs for filling milk into paper cartons within the capacity of said Cramer machine.

21. Defendants are the sole owners of said accused Cramer filling machine serial No. 1130 and said machine is free from encumbrance of any kind with respect to ownership by defendants.

22. Claims 1, 6 and 7 of the Mojonnier Reissue Patent 23,830 are as follows:

"Claim 1: In a dispensing mechanism, the combination of a fluid container, means for supplying fluid to said container, means in said container operable to maintain the fluid in the container at a preselected level, a valve mounted on the container for dispensing fluid

418

from the container into a receptacle, a solenoid mounted on said container for operating said valve, a member extending through said container for interconnecting said solenoid and said valve, an internal timer for controlling the energization of the solenoid and means to actuate said timer to energize said solenoid and thereby move said member to open said valve, whereby a substantially constant volume of liquid is dispensed each time said solenoid is energized.

"Claim 6: A filling machine for delivering an accurately controlled predetermined quantity of-milk and other free flowing fluids for the repetitive filling of individual milk containers and the like each in a single complete operation, the combination of a relatively large main fluid supply tank; a fluid supply container having a fluid capacity substantially smaller than said main supply tank and larger than the quantity to be delivered in filling said individual containers; said fluid supply container being provided with a bottom delivery outlet having a given orifice factor and area of orifice, through which outlet orifice the fluid freely flows by gravity; a valve in said bottom outlet operable between an open position in which the fluid flows for delivery into an individual container positioned beneath and in filling co-action with said outlet and a closed position for stopping said flow; means operable to deliver said fluid from said main tank to said fluid supply container and to maintain a substantially constant preselected hydrostatic head of the fluid in said supply container, said hydrostatic head having a predetermined value with relation to said orifice factor and area of orifice whereby to effect controlled relatively rapid continuous flow of the fluid from the supply container to the said individual container when the latter is in said filling position; and a timer for controlling the operation of said valve, said timer having a starting switch and operating to control a continuous uninterrupted time period in response to the initial actuation of said switch,

said timer controlling said valve to continuously hold open said valve throughout said time period whereby to deliver said predetermined flow and quantity of fluid in a single complete operation to each said individual container and whereby the preselected constant factors of said hydrostatic head in the supply container and said orifice delivery produce relatively rapid filling of said individual container and control of splash effect of the fluid in its discharge into the said individual container, said timer being adjustable to vary said time period and the predetermined quantity òf fluid delivered to each individual container.

"Claim 7: A filling machine for delivering an accurately controlled predetermined quantity of milk and other free flowing fluids for the repetitive filling of individual milk containers and the like each in a single complete operation, the combination of a large source of fluid, a fluid supply container having a fluid capacity substantially smaller than said source and larger than the quantity to be delivered in filling said individual containers, a fluid delivery line interconnecting said source and said supply container, a valve operable to control the flow of fluid through said fluid delivery line into said supply container, the supply container being provided with a bottom delivery outlet having a given orifice factor and area of orifice through which outlet orifice the fluid freely flows by gravity, a valve in said outlet operable between an open position in which the fluid flows for delivery into an individual container located beneath said supply container and a closed position for stopping said flow, a float in said supply container operable to control the first mentioned valve to replace the fluid in said supply container as it is dispensed and also operable to maintain the fluid in the supply container at a preselected level and providing a hydrostatic head of predetermined value with relation to said orifice factor and area of orifice whereby to effect controlled relatively rapid continuous flow of the fluid from the supply

container to said individual container when the second mentioned valve is held open, a solenoid for operating said second mentioned valve, operating means interconnecting said second mentioned valve and said solenoid, and an interval timer for controlling the energization of said solenoid to continuously hold open said second mentioned valve for a preselected time period to control a continuous uninterrupted flow delivery of the fluid to said individual container whereby the preselected constant factors of said hydrostatic head in the supply container and said orifice delivery produce relatively rapid filling of said individual container and control of splash effect of the fluid in its discharge into said individual container, said timer being adjustable to vary said time period and the predetermined quantity of fluid delivered to each individual container."

23. Each and every one of the mechanical elements of claims 1, 6 and 7 of the Mojonnier Reissue Patent 23,830 finds a complete response in the accused Cramer filling machine in term and in substance.

24. The accused Cramer filling machine operates to perform the same functions in the same way and accomplishes the same result as in the Mojonnier Reissue Patent 23,830.

25. Plaintiff has not authorized or consented to the manufacture, sale or use of said accused Cramer filling machine.

26. Plaintiff has been damaged by the unauthorized sale to defendants Eby's Guernsey Dairy, Inc. and Harvey B. Fink of said accused Cramer filling machine, serial 1130, and by the unauthorized continued use of said machine by said defendants, the amount of said damage being $2,074, the difference between plaintiff's selling price of plaintiff's equivalent machine made under its Reissue Patent 23,830 and the price which defendants paid for said accused Cramer filling machine.

Conclusions of Law

1. This Court has jurisdiction of the subject matter of this cause under Title 28, Section 1338 of the United States Code.

2. This Court has jurisdiction of the plaintiff, The Mojonnier Dawson Company, an Illinois corporation, defendant Eby's Guernsey Dairy, Inc., an Indiana corporation, and defendant Harvey B. Fink, a resident of Elkhart, Indiana.

3. Plaintiff is the legal owner of United States Reissue Patent 23,830 and the right to recover for infringement thereof.

4. Claims 1, 6 and 7 of said reissue patent are valid as determined by the United States Court of Appeals, Seventh Circuit, in a decision dated January 15, 1958, 251 F.2d 345, certiorari denied 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148.

5. The accused Cramer filling machine infringes claims 1, 6 and 7 of said Reissue Patent 23,830.

6. Defendants Eby's Guernsey Dairy, Inc. and Harvey B. Fink are the sole owners of said accused Cramer filling machine, Serial 1130.

7. Defendants Eby's Guernsey Dairy, Inc. and Harvey B. Fink have infringed claims 1, 6 and 7 of said Reissue Patent 23,830 by their purchase and use of said accused Cramer filling machine without consent or authorization of plaintiff, and said defendants are continuing such infringement by their use of said machine.

8. A judgment in favor of the plaintiff and against the defendants Eby's Guernsey Dairy, Inc. and Harvey B. Fink may be entered consistent with the findings of fact and conclusions of law herein expressed.

9. The entry of judgment shall include costs and damages in favor of plaintiff consistent with the findings of fact and conclusions of law herein expressed.